# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ASSOCIATES IN EMERGENCY RESPONSE, LLC,**

     **Plaintiff,**

     **v.**

**REDLINE GLOBAL, LLC, et al.**

     **Defendants.**

**Civil No. 23-1058 (ADC)**

## OPINION AND ORDER

### I.    Introduction

Before the Court is co-defendant Atlys Group, LLC's ("defendant") motion to dismiss the amended complaint filed by plaintiff Associates in Emergency Response, LLC ("plaintiff").[1] **ECF No. 24**. Defendant seeks dismissal of all the claims against it under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In essence, defendant argues that the complaint is devoid of factual allegations sufficient to sustain the claims against it.

For the reasons set forth below, the motion to dismiss at **ECF No. 24** is **DENIED**.

### II.    Factual and Procedural Background

Plaintiff filed its original complaint on February 6, 2023, naming defendant, Redline Global, LLC ("Redline"), and Rance MacFarland ("MacFarland") as defendants. **ECF No. 1**. On

---

[1] For sake of clarity, the Court will refer to the moving party, Atlys Group, LLC as "defendant" and to the similarly named co-defendant, Atlys Global, LLC, as "Atlys Global."

April 3, 2023, defendant filed a motion to dismiss in which it argued that plaintiff had basically

confused defendant with Atlys Global, LLC ("Atlys Global"), and requested its dismissal from

the case. **ECF No. 8**. Plaintiff then moved to amend the complaint to add Atlys Global as co-

defendant. **ECF No. 17**. The Court granted plaintiff leave to file the amended complaint, over

defendant's opposition. **ECF No. 21**.  It further denied defendant's motion to dismiss as moot

without prejudice to refiling once the amended complaint had been filed. **ECF No. 22**. Plaintiff

filed the amended complaint on March 18, 2024. **ECF No. 23**. It included Atlys Global as a new

co-defendant but maintained all others, including defendant.

The allegations are substantially the same as those in the original complaint, only that

now, the factual allegations are generally directed at Redline, defendant, Atlys Global "and/or"

Rance MacFarland in the conjunctive and disjunctive sense. In sum, plaintiff claims to have

entered into a "Teaming Agreement" on January 25, 2018, with Redline, whereby they would

work together in, essentially, a contractor-subcontractor capacity to obtain and perform disaster

recovery projects in Puerto Rico after hurricane María in September of 2017. **ECF No. 23** at 3-4,

¶¶ 12-17. Redline then entered into a "Receivables Funding Agreement" with defendant on

February 1, 2018, to assign it its account receivables in exchange for advances on the invoiced

receivables, which included the cost of the work performed by plaintiff. *Id.*, 4-5, ¶ 18. That

agreement was signed by a certain "Jason Watkins" as managing member of Redline and by a

certain "Frank Robinson" as managing member of defendant. *Id.*, at 5, ¶ 20. Plaintiff and Redline

then entered into a "Funding Agreement" on March 14, 2018, where "Redline agreed to assist

[plaintiff] in the prepayment of receivables under contracts entered into by [plaintiff] and Redline pursuant to the Teaming Agreement." *Id.*, at ¶ 21.

In the following months, plaintiff alleges that payments began to arrive late, made in an amount less than agreed upon, or not made at all. Id., at 7, ¶¶ 30, 31. Inquiries as to the status of the late, incomplete, or missing payments were directed to defendant "and/or" Atlys Global. *Id.* at ¶ 32. MacFarland, speaking for defendant "and/or" Atlys Global, would then provide excuses in response to plaintiff's inquiries and make assurances of forthcoming payments. *Id.*, at ¶ 33. Frank Robinson, the managing member of defendant, was copied in this correspondence. *Id.*, ¶ 34. A direct funding agreement between plaintiff and defendant "and/or" Atlys Global was at one point discussed, but plaintiff alleges that this was a bad faith delay tactic. *Id.*

On that point, on June 12, 2018, MacFarland responds to an email from Amanda Smith, managing principal of plaintiff, requesting follow up on the funding agreement. *Id.*, at 8, ¶ 38. There, among other things, he wrote "I have reached out to Frank as to the timing of the Redline wire with your funds…." *Id.*

On August 27, 2018, MacFarland provided the following assurance to plaintiff:

Atlys Global has entered into a funding agreement with [plaintiff] and one of their prime contractors, Redline Global, to provide short term funding and approved receivables.

Atlys Global anticipates [plaintiff] being funded, both on their own prime contracts and on subcontracts they have with Redline Global on all of their outstanding receivables within the next 14 days.

Atlys Global anticipates the first funding to be made by the end of this week. Please do not hesitate to reach out with any questions.

*Id.*, at 9, ¶ 41. With MacFarland's consent, plaintiff sent this assurance to a third party to secure bridge financing for plaintiff while the funding agreement was finalized. *Id.*, at ¶ 43. Plaintiff alleges that Atlys Global did not honor this assurance and caused plaintiff to default on the bridge financing. *Id.*, at ¶ 44. Plaintiff also alleges that by November of 2018, it ran out of money and credit and had to surrender its workforce and participation in the recovery projects to Redline, defendant "and/or" Atlys Global. *Id.*, at 10, ¶¶ 45, 46.

Plaintiff further alleges that Redline amended its articles of incorporation on March 28, 2019, to include MacFarland as CEO, Frank Robinson as Chairman of the Board, and a "Jorge Sánchez" as CFO. *Id.* at 11, ¶ 50. Plaintiff also alleges that Redline's auditors sent a letter to plaintiff acknowledging that it owes $2,026,563.56. *Id.*, at ¶ 51. However, "even though they have been compensated by FEMA," the defendants have failed to pay plaintiff for its work. *Id.*, at ¶ 52.

Finally, plaintiff alleges that by "virtue of his position as the owner, officer, director and/or controlling employee" of defendant "and/or" Atlys Global, MacFarland used these companies as alter egos. *Id.*, at ¶ 53. Further, that MacFarland and Frank Robinson each reaffirmed the promises and commitments of defendant and Atlys Global "as though they were being made on behalf of a single entity." *Id.* For these reasons, plaintiff alleges that the separate corporate identities of Redline, defendant "and/or Atlys Global" should be disregarded as they have been used to, among other things, avoid compliance with legal obligations and inflict and perpetuate fraud on plaintiff. *Id.*, at 11-12, ¶¶ 53-57.

Given the amended complaint, on March 26, 2024, defendant filed a second motion to dismiss the claims against it for failure to state a claim upon which relief can be granted. **ECF No. 24**. Plaintiff did not file a response in opposition, for which reason the Court has deemed the motion to dismiss unopposed and submitted for resolution. **ECF No. 25**.

### III.    Legal Standard

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, inter alia, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt.*,

*Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S.

at 678). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability

that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-*

*Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

## IV.    Discussion

Plaintiff brings a total of eight causes of action, denominated as "Counts" I through VIII,

against defendant and the other co-defendants.[2] Count I specifically alleges breach of contract

against Redline, but also alleges that defendant "and/or" Atlys Global are liable given their

acquisition of Redline. **ECF No. 23** at 13, ¶¶ 58-67. Counts II, III, and IV allege fraud, fraud in

the inducement, and negligent misrepresentations against all defendants, and is premised on

MacFarland's repeated representations that plaintiff would receive payment for the work it

performed and continued performing for Redline and that Atlys Global would cover payment

for the bridge loan obtained by plaintiff. *Id.*, at 13-15, ¶¶ 68-90. Count V alleges a breach of

fiduciary duty created between plaintiff and Redline, defendant "and/or" Atlys Global,

pursuant to the various contracts between them, which rests on the defendants' use of

confidential information provided by plaintiff (e.g., plaintiff's methods, processes and pricing)

to plaintiff's detriment. *Id.*, at 16, ¶¶ 91-94. Count VI is a claim for equitable accounting against

Redline, defendant "and/or" Atlys Global aimed at determining the full amount of damages

suffered by plaintiff. *Id.*, at 16-17, ¶¶ 95-98. Count VII is a claim brought under Lousiana "unfair

---

[2] The Court notes that Counts I and VI do not directly relate to MacFarland as a defendant.

trade practices and consumer protection laws" against all defendants. *Id.*, at 17, ¶¶ 99-104. Finally, Count VIII is a claim of conspiracy "to transfer assets, evade existing legal obligations, deprive [plaintiff] of business opportunities through the use of fraud and deceit and in violation of the laws." *Id.*, at 18, ¶¶ 105-113. It includes references to all defendants as well as to non-parties Frank Robinson and Jason Watkins as agents of defendant and Atlys Global participating in the conspiracy. *Id.*, at ¶¶ 108, 109, 111.

From the outset, the Court notes that though defendant seeks dismissal of all claims against it, it failed to argue why dismissal of Counts VI and VIII is proper. *See* **ECF No. 24** at 3-4, ¶¶ 14-19 (leaving out Counts VI and VIII from its discussion). But the underlying reason for dismissal is that there is no direct contractual relationship between it and plaintiff, only an allegation regarding the Receivables Funding Agreement that existed between it and Redline. *See id.* That much is borne out by the allegations in the complaint, but this glosses over the several allegations that impute wrongdoing to its named representative, Frank Robinson. As the Court understands it, plaintiff's theory of liability rests on defendant being the source of funding for Redline, who in turn was supposed to pay plaintiff for its subcontracting work on the projects pursued under the Teaming Agreement and the subsequent relationship. Thus, if Redline had no money to pay it for its work, it was because defendant did not provide it. Defendant also ignores the various allegations, supported by documents attached to the amended complaint, that defendant was aware of the assurances of payment and representations made by MacFarland on behalf of Atlys Global, at least one of which implied

that defendant was Redline's source of funding for payment to plaintiff. **ECF No. 23** at 8, ¶ 38. And finally, there is no argument against plaintiff's allegation that defendant, along with Redline and Atlys Global, engaged in a concerted effort to harm plaintiff.

The Court is hesitant to dismiss the amended complaint solely on the grounds put forth by defendant in its motion to dismiss. As the First Circuit explained:

> It is by now common ground that a complaint must contain only a short and plain statement of the claim showing that the pleader is entitled to relief. Although this is a low bar, it still requires more than a cascade of conclusory allegations: at a minimum, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.

*Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021) (cleaned up). Defendant does not put the Court in a position to determine whether, even taking as true all the well-pleaded allegations, any of the causes of action fails under applicable law.[3] Therefore, purely as a matter of whether the amended complaint should be dismissed against defendant, the Court is unable to answer that question in the affirmative.

---

[3] In both the amended complaint and the motion to dismiss, there is a notable absence of discussion on the law applicable to each cause of action. Plaintiff is not required to provide a comprehensive memorandum of law in its pleadings, nor is defendant required by rule to brief the Court on the underlying law. However, it would behoove a defendant seeking dismissal to brief the Court on the law underlying the claims against it and explain how, even taking the well-pleaded allegations of the complaint as true, they would be insufficient as a matter of law to sustain an inference of liability. And a plaintiff interested in keeping its claims alive should actively oppose any such motion, instead of sitting on its hands and leaving the matter entirely up to the Court's discretion. In this regard, the Court highlights that its decision today is cabined to defendant's motion to dismiss and the Rule 12(b)(6) analysis, leaving for another day whether plaintiff's claims against defendant would actually pass muster at trial or summary judgment.

**V.      Conclusion**

For all of the above reasons, the Court **DENIES** defendant's motion to dismiss at **ECF No. 24.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of October, 2024.

                                        **S/AIDA M. DELGADO-COLÓN**
                                        **United States District Judge**